EDWIN HODGSON, Appellant, *vs.* E. W. KNOBLAUCH, Appellee.

*Opinion filed June 24, 1915.*

1. ELECTIONS—*mandatory provisions of law as to ballots must be adhered to.* The mandatory provisions of the law concerning ballots must be complied with or the ballots cannot be counted, and they must not bear any distinguishing marks.

2. SAME—*general rule as to when marks are not distinguishing marks.* If a mark on a ballot is reasonably connected with an effort of the voter to cast his ballot and can be reasonably explained consistently with an honest purpose on his part it is not a distinguishing mark.

3. SAME—*exact rules cannot be laid down applicable to every ballot.* Exact rules as to what are or are not distinguishing marks cannot be laid down which will apply to every ballot apart from the evidence afforded by the ballot itself but the question must largely be determined by an inspection of the ballot.

4. SAME—*effect of cross outside the square.* If a ballot has a cross in a party circle and a cross outside the square opposite the name of a candidate for a certain office, the only effect of such

outside cross is to nullify the ballot as to such particular candidate, but the ballot should be counted for the other candidates on the ticket under the marked circle.

5. SAME—*when irregular mark must be regarded as a distinguishing mark.* If in the square opposite the name of a candidate for representative there is a horizontal mark from which three vertical marks extend downward, making the square look like a barred window, the ballot must be regarded as bearing a distinguishing mark, even though it is possible the voter was attempting to cumulate his vote.

6. SAME—*when the ballot cannot be counted.* If a mark something in the nature of a square has been made in the circle at the head of a party ticket and has been rubbed out, the ballot cannot be counted for any candidate on such ticket unless a cross has been made in the square opposite his name.

7. SAME—*lines should not be drawn through names of candidates on tickets not voted.* A ballot cannot be counted which has a cross in each of the squares on one ticket and vertical lines drawn through the squares and the names of the candidates on the other tickets.

8. SAME—*apparently accidental tearing of ballot does not invalidate it.* While a part of a ballot may be torn off in such a way as to identify it, yet if the tearing off of a corner of a ballot is apparently accidental, and no part of the printing is torn off, the ballot may properly be counted.

9. SAME—*when figure "3" after name of candidate is and is not distinguishing mark.* A figure "3" after the name of a candidate for the office of county clerk cannot reasonably be explained on the theory that the voter was attempting, in ignorance, to cumulate his vote and is a distinguishing mark, although it is not a distinguishing mark if made after the name of a candidate for representative, for which office a cumulation of vote is permissible.

10. SAME—*a ballot not having any cross upon it cannot be counted.* A ballot cannot be counted where the only marks upon it are in the circle at the head of one ticket and are marks resembling a scroll but having no resemblance to a cross.

11. SAME—*when crosses in two squares do not neutralize each other.* A cross in the square opposite the name of the candidate for county treasurer on the democratic ticket is not neutralized by a cross in the square on the progressive ticket at the place for the candidate for county treasurer but which place was blank, there being no candidate for such office on the progressive ticket.

12. SAME—*lines intersecting practically in the form of capital letter "T" are sufficient.* Lines intersecting in the circle or

square practically in the form of a capital letter "T" will constitute a sufficient cross.

13. SAME—*when ballot should be counted for all candidates on ticket under marked circle.* A ballot having a cross in the circle at the head of one ticket should be counted for all the candidates on such ticket, where the only other mark on the ballot is a hole in the square opposite the name of a candidate on another ticket, apparently made by rubbing out a cross marked in such square.

14. SAME—*what are not distinguishing marks.* Marks on ballots in the circles or squares which indicate that the voters had commenced to make a cross in each instance but had abandoned their purpose and failed to complete the cross will not be regarded as distinguishing marks.

15. SAME—*what are mere attempts to cumulate vote for representative.* Figures or additional crosses marked opposite the names of candidates for representative will be regarded as attempts to cumulate the vote for representative and not as distinguishing marks, if there is nothing about the marking which is inconsistent with such purpose.

16. SAME—*effect where a voter makes a square after rubbing hole in ballot.* If a voter, in attempting to erase marks from a square, rubs a hole in the ballot and then extends the top and bottom lines of the square and connects them with a line, making three sides of a square, in which he places a cross, the ballot will *not* be regarded as having a distinguishing mark.

APPEAL from the County Court of Woodford county; the Hon. ARTHUR C. FORT, Judge, presiding.

ISAAC B. HAMMERS, and ORMAN RIDGELY, for appellant.

J. A. RIELY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At the November election, 1914, Edwin Hodgson, appellant, was a candidate on the republican ticket for the office of county treasurer of Woodford county, and E. W. Knoblauch, appellee, was a candidate for the same office on the democratic ticket. The canvass of the votes showed

a majority of twenty-six for appellee and a certificate of election was issued to him. Appellant filed in the county court his petition to contest the election, alleging that certain ballots were wrongfully counted for appellee and that lawful ballots for the appellant were not counted for him. Appellee answered the petition, denying its averments and making issues of fact, which were submitted to the court. The ballots cast at the election were produced and counted, and the court found that appellee had a majority of one and adjudged that he was duly elected. From the order and judgment this appeal was prosecuted, and the ballots have been certified to this court.

The validity of some of the ballots is disputed on account of alleged failures of the voters to comply with the requirements of the law in indicating their choice of candidates, and others are objected to as bearing marks which were intended for identification of the particular ballots and to distinguish them from all others. The mandatory requirements of the law must be complied with or the ballot cannot be counted, and it must not bear any distinguishing mark. Any one of an infinite variety of marks may be determined upon for the purpose of identification and may constitute a distinguishing mark, and, on the other hand, marks may be so connected with an apparently honest effort of the voter to indicate his choice of candidates that it is evident they were not made for the purpose of identifying the ballot and should not be regarded as distinguishing marks. The body of electors includes not only the well informed, capable and careful voter, but also the ignorant, incapable and careless voter, and if a mark is reasonably connected with an effort of the voter to cast his ballot and can be reasonably explained, consistently with an honest purpose on his part, it is not a distinguishing mark and the ballot should not be rejected. (*Rexroth* v. *Schein,* 206 Ill. 80; *Winn* v. *Blackman,* 229 id. 198; *Grubb* v. *Turner,* 259 id. 436.) Generally a conclusion can be reached

by an inspection of the ballot, and necessarily it is quite difficult to make clear in a written opinion what appears to the eye by such an inspection, so that exact rules cannot be laid down applicable to every ballot apart from the evidence afforded by the ballot itself.

In the argument appellant contends that the court erred in rejecting four ballots which should have been counted for him. The first ballot was cast in Worth precinct, and it has a cross in the republican circle and was rejected because the cross at the square opposite the name of a candidate for representative was outside the square. The only effect of the cross being outside of the square in the case of that candidate was to nullify the ballot as to him. The voter attempted to vote for the representative and the cross was not a distinguishing mark. The court erred in rejecting the ballot. The second ballot was cast in Metamora precinct and has a cross in the republican circle. In the square opposite the name of a candidate for representative there was a horizontal mark, from which three vertical marks extended downward to the bottom of the square, making the square look like a barred window. It is possible that the voter was attempting to cumulate his vote, but that does not appear to be probable, and if he was making such an attempt there was no cross in the square. There is no resemblance to the cross made in the form of a capital letter "T" in *Slenker* v. *Engel*, 250 Ill. 499, or *Brents* v. *Smith*, 250 id. 521. The ruling on that ballot was right. The third ballot was cast in Olio precinct, and it has a cross in the square before the name of Raymond Robins and something in the nature of a cross has been made in the republican circle and rubbed out. That ballot was properly rejected. The fourth ballot has no mark in the circle but has a cross in each of the squares in the republican column. There are numerous vertical lines drawn through both the squares and the names of the candidates in every other column. These marks were not made by

the voter in any attempt to indicate a choice but would be effective in identifying the ballot, and the court did not err in refusing to count that ballot for appellant. *Kerr* v. *Flewelling,* 235 Ill. 326.

Appellant next argues that the court erred in counting six ballots for appellee. One was cast in Palestine precinct, and the objection is that the corner of the sheet above the socialist labor ticket has been torn off. A voter might tear off a part of a ballot in such a way as to identify it, but in this case it is apparent that the tearing was accidental, whether by the voter or by someone else. None of the printing on the ballot is torn off, and it would require a careful matching of the piece torn off to furnish any identification, and that would be impracticable. The ballot was properly counted for appellee. A ballot cast in Clayton precinct has a cross in the democratic circle and a cross in the square in the same column opposite the name of a candidate for county clerk, and following the name of the candidate is the figure "3." The court counted the ballot for appellee, and the argument in favor of the ruling is that the voter thought he could cast three votes for county clerk and the figure was made through ignorance. We do not think this ballot comes within the rule of *Smith* v. *Reid,* 223 Ill. 493, where five constables were to be elected, *Slenker* v. *Engel, supra,* where three trustees of the university were to be elected, or *Grubb* v. *Turner, supra,* where a member of the General Assembly was to be elected and a voter not well informed might have thought he could cumulate his vote. The court erred in counting that ballot for the appellee. Another ballot counted for appellee was cast in Olio precinct No. 1. There is a cross in the republican circle and crosses in the squares in front of the names of two candidates on the democratic ticket, one of them being the appellee. There is also a mark after the name of one of the candidates for representative, which counsel for the appellant say is the capital letter "F," but we

think it looks more like the figure "3." The voter was evidently intending to cumulate his vote and not to make a distinguishing mark, and therefore the ballot was properly counted. The next ballot was cast in Olio precinct No. 2 and the only marks on it are in the democratic circle. They are curious marks,—none of them straight, resembling a scroll, and none of them bearing any resemblance to a cross. The ballot should not have been counted. (*Parker* v. *Orr,* 158 Ill. 609.) Another ballot was cast in Minonk precinct No. 2. The voter was voting a mixed ticket, and there is a cross in the progressive circle and in several squares in that column and also crosses in a number of squares in the democratic column, including the square in front of the name of appellee. The objection to the ballot is that there is a cross in the square at the place of a candidate for county treasurer but that place was blank. The voter evidently made a cross in the square and then discovered that there was no candidate for the office and voted for appellee. The crosses in the squares did not neutralize each other, because in one place there was no candidate, and the ballot comes under the rule of *Bell* v. *Clawson,* 261 Ill. 148, where the voter put a cross in each of two party circles and there were no candidates on one ticket. A ballot cast in Cazenovia precinct No. 1 has no mark in any of the party circles but has marks in the squares of different columns. In several instances the voter brought the lines together practically at right angles, so that the lines intersected, but one line did not cross the other, and one of these appears in the square in front of the appellee's name. The lines intersect within the square practically in the form of a capital letter "T," which was held sufficient in *Slenker* v. *Engel, supra,* and there was no error in counting that ballot.

There is one ballot cast in Metamora precinct which has a cross made with a pencil in the republican circle and no other mark on the ballot except a hole in the square op-

posite the name of appellee, for whom it was counted. It is argued that the hole was made in an attempt to make a cross in the square, but we see no reason to justify such a conclusion. It rather appears, if there was any attempt to make a cross, the hole was made by erasing it, and as there was a cross in the republican circle the ballot should have been counted for appellant.

The appellee has assigned cross-error on the refusal of the court to count six ballots for him. One ballot was cast in Clayton precinct and has a cross in the democratic circle and a diagonal mark in two of the squares of the republican column. Naturally, the inference is that the voter commenced to make crosses in these squares but changed his mind and did not complete the crosses, so that they were not completed votes. There is a similar condition in a ballot cast in Olio precinct No. 1, in which there is a mixed ticket. The voter marked his ballot for Raymond Robins on the progressive ticket, made a cross in the square opposite the name of the appellee, a cross in the square on the republican ticket for county superintendent of schools, and also a diagonal mark in the square on the progressive ticket for county superintendent of schools when there was no candidate for that office in the progressive column. In these cases the voters appear to have been attempting to cast their ballots and not to make distinguishing marks, and the ballots should have been counted for appellee. A ballot cast in Olio precinct No. 2 has a diagonal mark in the square opposite the name of Lawrence Y. Sherman, but the line has been partly erased and a cross appears in the square opposite the name of Raymond Robins. The voter made a cross in the square opposite the name of appellee, and the ballot should have been counted for him. In a ballot cast in Roanoke precinct No. 2 there is a cross in the democratic circle and two parallel marks opposite the name of the candidate for county judge on the republican ticket. This appears to have been an ineffectual attempt to

vote for the county judge and not to make distinguishing marks, and appellee was entitled to have the ballot counted for him. A ballot in the same precinct has a cross in the democratic circle and a diagonal line in each of the squares for county judge and county superintendent of schools on the republican ticket. These lines indicate that the voter commenced to make a cross in each instance but abandoned his purpose and the ballot was not completed. These lines are not regarded by this court as distinguishing marks for the purpose of identification. (*Tandy* v. *Lavery*, 194 Ill. 372.) A ballot cast in Metamora precinct is marked with a pen and there are ink blots in the squares in front of the names of appellee and appellant. It is argued that one blot was made by folding the ballot so as to bring the two places together while the ink was wet. However that may be, there is nothing resembling a cross in either square, and the court was right in rejecting the ballot.

A ballot cast in Minonk precinct No. 2 has a cross in the democratic circle. The voter made a cross in the square for representative and appears to have partly erased it, making a hole in the paper. He then extended the top and bottom lines of the square to the left, making three sides of a square and made a cross in that place. There is neither a distinguishing mark nor anything but an honest attempt to vote for the representative, and the ballot should have been counted for appellee.

In a ballot cast in Metamora precinct for the appellee, which was rejected, the voter made a cross in the square for each of two candidates for representative and an additional cross outside for one of them. He was evidently trying to cast two votes for one and one for the other, and his ballot should have been counted for appellee. In another ballot in that precinct the voter put a cross in the square for representative and marked a figure "1" outside of the square, with the evident intention of showing that

he intended to cast only one vote for that representative. The vote should have been counted for appellee.

In a ballot cast in Clayton precinct the voter made a cross in the democratic circle and three crosses opposite the name of a candidate for representative, showing his intention to cumulate his vote for that representative and not indicating any intention to identify the ballot.

The appellee had a majority of four votes for the office of county treasurer, and the judgment of the county court declaring him elected is affirmed.      *Judgment affirmed.*