(No. 18231.—

MARGARET M. ALLEN, Appellant, *vs.* JAMES K. FULLER,
Appellee.

*Opinion filed October 25, 1928—Rehearing denied Dec. 7, 1928.*

CLARENCE W. HEYL, and JAMES P. McMANUS, (F. B. BRIAN, and L. M. BURKEY, of counsel,) for appellant.

JOHN W. FLING, JR., WALLACE J. BLACK, and CLYDE M. WEST, for appellee.

Per CURIAM: This case arose out of an election contest in the county court of Stark county between petitioner, appellant here, and respondent, appellee here, for the office of county treasurer. Petitioner was a candidate on the democratic ticket and respondent a candidate on the republican ticket at an election held on November 2, 1926. The canvassing board gave respondent 1559 votes and petitioner 1530, and respondent was declared elected by a majority of 29 votes. Petitioner filed her petition in the county court to contest the election. On the trial of the contest the ballots cast at the election were re-counted. Upon the re-count she received 1516 votes and respondent 1503 votes, including all ballots which were not objected to and 27 ballots for the petitioner and 27 ballots for the respondent to which objections were withdrawn, giving the petitioner a majority of 13 votes on the ballots to which objections were not urged. At the conclusion of this count 18 objected-to ballots for petitioner and 34 for respondent remained uncounted. Of the 18 for the petitioner the court rejected 8 and counted 9 for petitioner and 1 for respondent. Twenty-two of the objected-to ballots for respondent were counted for him and objections sustained to 12. The court decided that petitioner had received 1525 votes and respondent 1526 and that he was elected to the office of county treasurer. Petitioner brings the record to this court by appeal.

Errors and cross-errors have been assigned on the record and argued by the respective parties to this appeal. The

ballots have been certified to this court and the ballots objected to in the county court appear in the record as petitioner's exhibits 9 to 17 inclusive, 19, 28, 33, 37, 38, 41, 42, 47 and 48, and respondent's exhibits 5, 7, 8, 11, 12, 13, 19, 20, 22, 23, 24, 27, 28, 30, 33 to 38 inclusive, 44, 45, 46, 54, 55, 58, 62, 63, 65, and 67 to 71 inclusive.

The court sustained objections of respondent to petitioner's exhibits 10, 11, 12, 13, 15, 16 and 17, and respondent's exhibits 33, 34, 35, 36, 37 and 45, being ballots cast for them, respectively, which were not initialed by any of the election judges, and under the uniform holding of this court were not legal ballots. The objections were properly sustained to all. (*Perkins* v. *Bertrand*, 192 Ill. 58.) The rule as to absentee voters' ballots declared in *McCreery* v. *Burnsmier*, 293 Ill. 43, is, that no ballots can be counted under our present Election law that do not bear the initials of an election judge.

No objection has been presented in the brief of appellee to any of the ballots for petitioner objected to by respondent and counted for her except to exhibit 19, and therefore the action of the court on those ballots is not subject to review.

On exhibit 19 the voter expressed his choice by putting crosses in the squares in the republican party column. In the square opposite the name of respondent he made a single diagonal line. It is evident from an inspection of the ballot that he endeavored to, and did, practically erase the line. He put a cross in the square opposite the name of petitioner. Under the rulings of this court he expressed his intention to vote for petitioner because he did make a cross in the square opposite the name of petitioner. The court properly counted this vote for her.

Appellee states in his brief that if exhibit 19 was properly counted for petitioner her exhibit 16 was properly counted for respondent, and that respondent's exhibit 28, which the court rejected, should also be counted for him.

We agree with this statement. Petitioner's exhibit 16 shows a cross in the circle in the republican party column. In the democratic party column squares opposite the name of petitioner and opposite the name of the democratic candidate for sheriff contain marks. For sheriff, which name is immediately under the name of the candidate for county treasurer, a cross is made in the square. The center of the square opposite petitioner's name is blacked out with a pencil to the extent of half or more of the square. Apparently the voter began to mark in the square but afterward used the pencil to obliterate any mark previously made. The court properly counted the ballot for respondent.

Respondent's exhibit 28 was rejected. In the square opposite his name is a cross. In the square opposite the name of petitioner a pencil has been used, producing a blot of irregular shape, apparently intended to obliterate any indication of a cross. The ballot should be counted for the respondent.

The objection to exhibit 12 for petitioner is that the mark in the square is not a cross. The voter placed no mark in the circle but indicated the candidates voted for by marking the squares. All the marks are V's, more or less well formed. The mark in question is more in the form of the letter U. In *Atwater* v. *Eckard,* 282 Ill. 122, and *Brents* v. *Smith,* 250 id. 521, we held that if the lines within a circle or square meet but do not cross they cannot be held to be a cross, but if they meet and cross, even slightly, within the circle or square, they are sufficient to meet the requirement of the statute. The lines within the square, under previous decisions, do not constitute a cross, and the objection was properly sustained.

In petitioner's exhibit 13 the voter had apparently made a mark within the square opposite the name of petitioner. Pencil marks filling the square, except a very small portion on the upper left corner, blot out any lines that seem to have been placed in the square. In the upper left corner is

shown a very short line, and at the lower right corner a short line appears outside of the square and is apparently a continuation of the line in the upper left corner. No cross or line in the square is visible through the pencil marks blotting out the lines assumed to have constituted a cross. The voter did not use the circle in the republican party column. In the democratic party column a cross appears in the square opposite the name of the candidate for county superintendent of schools, which was immediately under the name of appellant. The voter indicated his intention to vote by crosses in the squares for eight candidates on the republican ticket. He made and erased a cross in one of the squares in that column and made an oblique line in another in the same column. So far as the marking in the square opposite petitioner's name discloses anything, it discloses that he began to make a cross and proceeded no further than making the one oblique line. No portion of a line is visible intersecting or crossing the line that seems to have been made and blotted. The court was clearly right in rejecting this vote for petitioner. *Kerr* v. *Flewelling*, 235 Ill. 326.

Petitioner's exhibit 28 contains a mark in the circle in the democratic party column bearing no resemblance to a cross. It resembles the letter O or P. There was no mark in any of the squares. The mark is similar to that in the case of *Parker* v. *Orr*, 158 Ill. 609, where it was held that the ballot should have been rejected. This ballot was properly rejected.

The court properly sustained the objection to petitioner's exhibit 47. The voter put a cross in the circle in the democratic party column. He put a cross in the square opposite petitioner's name and a cross in the square opposite respondent's name. Had he placed a cross in the circle in the democratic party column with no other marks it would have constituted a vote for all candidates in that column. By placing a cross in the square opposite the name

of respondent he manifested an intention to vote for him, but when he put a cross in the square opposite the name of petitioner the intention to vote for one candidate as against the other was not manifested. The voter could not vote for both, and for whom he intended to vote cannot be determined from the ballot.

Petitioner's exhibit 15 and respondent's exhibit 8 were objected to as containing distinguishing marks. Exhibit 8 contains a cross in the circle in the republican party column. On the left side is a pencil mark with the end extending over the first square in that column and extending on the margin on the left of the squares to and slightly under the lower part of the square opposite the name of Joseph E. Daley. A cross was placed in the square opposite respondent's name. Petitioner's exhibit 15 contains no mark in the circle. At the top of the republican party column are marks across the names of four candidates. No crosses were placed in the squares opposite those names. Crosses were placed in the square next above the marks just described and in the square next below them. The only vote attempted to be cast in the democratic party column was for petitioner, by marking a cross in the square. The court rejected petitioner's exhibit 15 and counted respondent's exhibit 8. Respondent's exhibit 8 could be clearly identified by the person voting that ballot from the line appearing thereon. Petitioner's exhibit 15 contains marks by which that ballot may be identified. This court has repeatedly held that a deliberate marking of a ballot by a voter that is not made in an attempt to indicate his choice and is also effective as a mark by which his ballot may be identified should be considered as a distinguishing mark. (*Hodgson* v. *Knoblauch,* 268 Ill. 315; *Perkins* v. *Bertrand, supra; Isenburg* v. *Martin,* 293 Ill. 408.) The objection to both ballots should have been sustained.

Objections were made to respondent's exhibits 7, 20, 23, 24 and 27 on the ground that they bear distinguishing

marks, consisting of the endorsement of the initials or the names of the judges of election. The statute requires that the ballots shall be endorsed with the initial of one of the judges. Respondent's exhibits 20, 23 and 24 were endorsed "J. F. Steward" and No. 27 was endorsed "J. F. St." The purpose of requiring the endorsement of a ballot by a judge of the election is to authenticate it as the ballot delivered to the voter. It is not shown how many of the ballots at this election were endorsed "J. F. Steward" or how many were indorsed by two of the judges, but, the purpose of the statute considered, no policy of the law is thwarted by the endorsement of the full name instead of the initials. There is no question as to the ballots having been voted, and no reason is perceived why the voter should not have his wish, as expressed by his ballot, counted. It is said that some of the ballots have the initials crossed out. The only ballot that has been found with the initials crossed is No. 7. The initials "J. M. I." are not crossed, but the initials of another above them has a single pencil line drawn across the top of the initials. John M. Ingels, one of the judges of the precinct, testified that he put his initials "J. M. I." on the ballot; that he first put on the initials of another judge who had gone to dinner and then struck them out and put on his own initials when the ballot was handed to the voter. They are not such distinguishing marks as invalidate the ballot. Marks placed upon a ballot by election officers without participation of the voter do not constitute distinguishing marks. (*Perkins* v. *Bertrand, supra.*) The court properly overruled the objection.

Respondent's exhibit 68 bears no marks that could possibly distinguish it from any other ballot, unless it be the well-formed crosses in the squares. No. 62 is said to bear distinguishing marks. No mark is on the face of the ballot except a cross in the circle in the republican column and crosses in the squares opposite the names of Coakley for sheriff and Morrasy for representative, in the democratic

party column. The court properly overruled the objections to both exhibits.

In respondent's exhibit 22 the voter made crosses in the squares opposite the names of the candidates in the progressive party column. Vertical lines were run through all the squares containing those crosses. The first four squares in the democratic party column were marked with crosses. A cross was placed in the square opposite the name of Wise, the candidate for Congress on the democratic ticket, and crosses also in two other squares in the democratic party column. In the republican party column a cross was placed in the square opposite the name of respondent. It is evident that the purpose of making the vertical lines through the squares that had been marked in the progressive party column was because the voter had made a mistake in marking the candidates for whom he wished to vote. No purpose being apparent other than that the vertical lines were made for the correction of a mistake of the voter before delivering his ballot, they do not constitute a distinguishing mark within the meaning of the law. (*Slenker* v. *Engel,* 250 Ill. 499.) The objection was properly overruled.

Respondent's exhibit 67 is said to have a distinguishing mark, in that it has a square in the circle and a circular line indicating the upper point of the intersecting line. The ballot has a cross in the circle in the republican party column. One of the lines seems to have been made by two marks with a pencil and with an intersecting and crossing line. There is a curve from the end of one of the lines of the cross drawn downward and connecting with the end of the line crossing the former. That arm of the cross seems to have been made in a curved form at first and afterward the other line drawn across it, but it forms a cross within the circle. There is no square in the circle, as petitioner contends. It is not a circle within a circle, as in some previous cases held to be a distinguishing mark. It was a straight republican ticket, except that the voter put a cross

in the square opposite the name of Coakley for sheriff in the democratic party column. The lines forming a cross in the square are broad lines. They seem to have been made with a blunt-pointed pencil, but all are crosses as the statute requires. They are not such distinguishing marks as invalidate the ballot. The objection was properly overruled.

The lines forming the cross in respondent's exhibit 44 extend partly within and partly without the square. The lines must cross within the square to comply with the requirement that the voter indicated his preference by a cross in the square. (*Grubb* v. *Turner*, 259 Ill. 436; *Sievers* v. *Hannah*, 296 id. 593.) A careful examination of the ballot shows that the lines cross within the square though the ends of two of the lines extend outside of it. The objection was properly overruled.

The lines in respondent's exhibit 46 cross outside the square, and for that reason the objection to it should have been sustained instead of overruled, as it was; and for the same reason the objection to exhibit 65 was properly sustained.

Respondent's exhibit 54 is challenged because the name of Annie Lowman was written at the foot of the democratic party column for county superintendent of schools. It is said that it constitutes a distinguishing mark. There was no candidate for county superintendent of schools printed on that ticket. The voter had a right to vote for any person for the office, and, no name being printed, he had a right, under the statute, to write in the name. The objection to the ballot was not, therefore, well taken.

Respondent's exhibits 55, 58, 69, 70 and 71 were objected to as containing distinguishing marks, in that the voters, in marking their ballots for member of the General Assembly, placed figures opposite the name of the person voted for for that office. Under the statute they had a right to vote one, two or three votes for a member of the legislature. The voters placed figures next to the square

opposite the name of the person voted for, indicating the number of votes they intended to cast for that particular candidate. In all of the foregoing objected-to ballots the voters indicated their intention to vote three votes for a member of the legislature except in exhibit 71, where the voter indicated his intention to vote one vote for one candidate by placing the figure "1" opposite the name of Rennick on the republican ticket and the figure "2" opposite the name of Morrasy on the democratic ticket. These figures do not constitute distinguishing marks and the objection to the ballots was properly overruled. *Grubb* v. *Turner, supra.*

Respondent's exhibit 19 has an oblique line in the circle in the republican party column. There is no cross in the circle nor in any of the squares in that column. There is a cross in the square opposite the name of Coakley for sheriff on the democratic ticket. By this ballot the voter did not vote for respondent. The ballot was improperly counted for him.

Respondent's exhibit 5 was voted in East Goshen. The voter was a resident and legal voter of East Goshen. He applied to the county clerk for an absentee voter's ballot. The clerk delivered to him, in the manner pointed out by statute, a ballot for that election. It was stamped "West Goshen" precinct. He voted the ballot in East Goshen precinct. It is objected that the ballot is illegal and cannot be counted for respondent. While it is a rule that mistakes or omissions of the officers in charge of the election machinery should not defeat the plainly expressed will of the people at such an election, yet such rule will not apply where the officers have failed to perform those mandatory duties of precaution which safeguard the votes of the people. (*People* v. *Bushu*, 288 Ill. 277.) The county clerk, whose duty it was to prepare the ballot and to deliver an absentee voter's ballot stamped with the name of the precinct in which it was to be voted, did not comply with the

law in that respect. The election officers had no right to accept in East Goshen an absentee voter's ballot designated for West Goshen. To hold otherwise is to ignore the plain requirements of the statute designed as a safeguard against fraud in elections. It is said by respondent that he should not be deprived of this vote because of the inadvertence of the clerk in stamping the ballot "West Goshen" instead of "East Goshen," but the voter and the election officials are charged with notice of the election laws, and the latter had no right to receive and to count it for respondent. The objection was properly sustained.

Respondent's exhibit 30 was properly rejected because it had no printed endorsement as being an official ballot for any election district in Stark county, with a *fac simile* of the signature of the county clerk thereon.

Respondent's exhibit 38 contains a cross in the square opposite his name and eight candidates were voted for in the republican party column by marks in the squares. Coakley, for sheriff, was voted for on the democratic ticket. In the square opposite the name of Brennan for United States senator are pencil marks almost filling the square and obliterating any cross or other character. A large blurred space extends up into the margin, which counsel for respondent suggest was caused by the voter writing the word "wrong" in the margin and then blurring it out. This explanation is rather imagined than evident. No word or letter shows through the blur and it cannot be discovered that any was written. What may have been the voter's purpose in his use of the pencil cannot be determined but it certainly had no tendency to indicate the person for whom he intended to vote. It was unauthorized to be placed upon the ballot, might have been used as a distinguishing mark, and the ballot was therefore properly rejected.

In respondent's exhibit 63 a pencil mark was drawn obliquely in the square opposite his name. There was no

cross in the circle. No lines cross in the square, and the objection was properly sustained.

Respondent's exhibits 11, 12 and 13 are objected to as containing no crosses in the squares. This is true of exhibit 12 and it must be rejected, but exhibits 11 and 13 have crosses within the squares opposite petitioner's name and were properly counted for her.

The court by its judgment properly counted 1525 ballots for appellant, the petitioner. It counted 1526 for respondent, the appellee, including 22 of the 34 ballots which were objected to. We have found that 15 of these 34 ballots should be rejected and 19 counted for respondent. His total vote is therefore reduced from 1526 to 1523.

The judgment of the county court is reversed and the cause remanded, with directions to enter a judgment declaring petitioner to have been elected.

*Reversed and remanded, with directions.*